**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **TQI NET, INC.** <br> 1165 Beargrass Way <br> Maineville, Ohio 45039 <br><br> Plaintiff <br><br> Vs. <br><br> **COMMERCIAL BANK OF CALIFORNIA** <br> 19752 Macarthur Blvd. <br> Suite 100 <br> Irvine, CA 92612 <br><br> **And** <br><br> **DIGITAL OCEAN, LLC** <br> 101 Avenue of the Americas <br> Floor 10 <br> New York, NY 10013 <br><br> Defendants | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | **CAUSE NO:** <br><br> **COMPLAINT FOR BREACH OF CONTRACT, THEFT, AND COPYRIGHT INFRINGEMENT** |

**COMPLAINT FOR BREACH OF CONTRACT, THEFT,**

**AND COPYRIGHT INFRINGEMENT**

<u>PARTIES</u>

1. TQI Net, Inc. ("TQI")is a for profit organization with its principal place of business in Warren County, Ohio, and principal mission of assisting other organizations grow their business

through several avenues, including but not limited to website engineering, design and hosting, funding, marketing, support and strategy.

2. Commercial Bank of California ("CBC") is a for profit banking institution, with its principal place of business in Irvine, California.

3. Digital Ocean, LLC ("Digital Ocean") is a for profit corporation that provides other corporations website development, hosting, and other services.

## JURISDICTION AND VENUE

4. This court has proper jurisdiction in that the parties are diverse, and the matter in controversy exceeds $75,000.00.

5. This Court is the proper venue as Plaintiff and Defendant CBC contracted for this Court to have jurisdiction over issues concerning the contract.

## STATEMENT OF FACTS

6. In 2013 CBC and TQI entered into discussions for TQI Net, Inc. to assist CBC with a full range of website services (including but not limited to developing, designing, maintaining and hosting), consulting, marketing, and other issues.

7. TQI did use its proprietary software and source code in developing CBC's website.

8. TQI did use its proprietary software, source code and development resources to host, maintain and update CBC's website.

9. TQI did use its proprietary processes in developing, maintaining and updating CBC's website.

10. Throughout the business relationship between TQI Net, Inc. and Commercial Bank of California, the parties operated under a renewable State of Work / User Agreement ("SOW"), beginning, October 10, 2013.

11. The original SOW, dated October 10, 2013, was twice renewed, once on November 1, 2017, and again on November 1, 2021.  Each of those SOWs was and/or is subject to TQI Net, Inc.'s Client Master Agreement and Terms of Engagement, in addition to the TQI Acceptable Use Policy.

12. Page 13 of the SOW clearly states that the SOW is "governed by the Master Agreement and Terms of Engagement."  The Agent for CBC initialed Page 13 of the SOW immediately under the statement declaring the SOW is governed by the Master Agreement and Terms of Engagement."

13. The Master Agreement and Terms of Engagement and the TQI Acceptable Use Policy have been readily available to Commercial Bank of California throughout the terms of the engagement.

14. TQI's standard operating procedure is to provide the website design products as a "DaaS" or Design As A Service, in which case TQI still owns the product, but licenses it to the client for use.

15. TQI utilized its standard operating procedure with CBC, in that TQI clearly owns the website, the design, the source code, etc., and licensed same to CBC.

16. TQI's standard operating procedure concerning software and software support is to provide it to clients as a "SaaS" or Software As A Service agreement, again with TQI. owning the product and licensing it to the client for use.

17. TQI utilized its standard operating procedure with CBC, in that TQI clearly owns the software, and licensed the use of the software to CBC.

18. The "DaaS" and "SaaS" is detailed with the client, and provides the client the ability to license the product through or from TQI.

3

19. The "DaaS and "Saas" are clearly specified in the Master Agreement and Terms of Engagement.

20. CBC understood this arrangement that the Website, design and the other products were either "DaaS" or "SaaS" agreements, owned exclusively by TQI.

2116. TQI's software, design, source code, work-up files, software enhancements, customized or standard and computer programs created, compiled or integrated by TQI, and finished assembled work of web pages are all copyrighted and owned by TQI.

2217. TQI provided all services and products in accordance with the terms of the SOWs. TQI provided all services, products, maintenance and support in accordance with the terms of the SOWs.

23. CBC executed the SOW and User Agreement on October 15, 2013.

24. TQI recently found that CBC violated the SOW and User Agreement, along with the Master Agreement and Terms of Engagement and TQI Acceptable Use Policy in several ways, essentially stealing TQI's intellectual property and providing it to a third party competitor, Digital Ocean.

25. CBC has provided TQI's intellectual property to Digital Ocean, a third party competitor who is currently hosting a mirror website, essentially copying TQI's website, and hosting the mirror website as though the design was its own.

26. CBC's actions violate several terms of the Master Agreement and Terms of Engagement which clearly indicate to all TQI clients, including CBC what is copyright material owned by TQI:

    a. Pursuant to the Master Agreement and Terms of Engagement 5.1.13. Security Roles and Permissions**.** CLIENT acknowledges and accepts responsibility to define user roles, content

permissions and any legal compliance associated therewith. While TQI will assist with these, in no way is TQI liable for failure to address the needs. Liability solely rests upon CLIENT to define and enforce all roles and permissions. In the event CLIENT fails to assign or create and communicate needs regarding security roles and responsibilities, all standard functionality will continue to exist and perform as designed with the COTS software. Security roles and permissions are configurations custom to CLIENT'S needs which may be impacted by geographical location. Without CLIENT'S express direction, TQI has neither information, responsibility nor obligation to adjust COTS software.

     b.     Pursuant to the Master Agreement and Terms of Engagement 7.1   Unless expressly stated in the SOW, Software and design which may be associated with this Agreement, including source code (where applicable), is protected by copyright laws and international copyright treaties, as well as, other intellectual property laws and treaties.  Software associated with this Agreement, including source code and design (where applicable), is licensed, not sold. Title to the software, the source code and design shall always remain with TQI. CLIENT must treat software associated with this Agreement, the source code and design (where applicable) like any other copyrighted material. Failure to recognize and protect software, source code and design works will constitute copyright infringement.

     c.     Pursuant to the Master Agreement and Terms of Engagement **7.2**   CLIENT shall (i) access and use the Services in accordance with this Agreement, applicable laws and government regulations and TQI's <u>Acceptable Use Policy</u> incorporated herein by reference, (ii) use commercially reasonable efforts to prevent unauthorized access to or use of the Services, and notify TQI promptly of any such unauthorized access or use, and (iii) take commercially reasonable steps necessary to ensure the security and compliance of the CLIENT Applications.

d.      Pursuant to the Master Agreement and Terms of Engagement **7**.3   All software provided by TQI will be identified by brand and/or company as "Powered and Designed by" and will be prominently but discretely displayed on footers and/or other appropriate and noninvasive areas and will include corresponding link(s) to TQI landing page(s) designed to promote TQI solutions. This is like an automobile company and branded ornaments which are on every automobile except these identifiers will be digitally linked. SEO benefits for the CLIENT will be included. Options to eliminate brand identification may be provided at additional cost.

e.      Pursuant to the Master Agreement and Terms of Engagement 7.4.1.   CLIENT agrees TQI employees and/or contractors may encompass and otherwise include CLIENT input which may constitute Inspiration, Ideation. Collaboration and Content within TQI's design work made for hire and that CLIENT input has no bearing whatsoever on ownership of TQI's copyrights and does not extend or establish or imply ownership in any way.

f.      Pursuant to the Master Agreement and Terms of Engagement **7.**4.2.   CLIENT understands and agrees that the CLIENT owns the Content and raw data of the Site utilizing TQI's platform and services, but content is not considered design and the CLIENT is prohibited to reproduce that content utilizing the same design and aesthetic layout, including use of whitespace, spacing, image sizing, table designs and page elements as created by TQI for artistic expression, the invocation of audience feelings and the intentional psychological connections made with users. TQI's design may include specific language, mental models, trigger points, user needs as they relate to user interaction and user experience and priorities.

g.      Pursuant to the Master Agreement and Terms of Engagement **7.**4.3.   CLIENT understands and agrees the use of an established CLIENT logo does not constitute or imply copyright ownership of creative design which may incorporate the logo within.

h. Pursuant to the Master Agreement and Terms of Engagement **7**.4.4**.** CLIENT understands and agrees the Context is the setting of where and how Content and/or Data are consumed. Context shapes meaning in all communications and without context effective communications is not possible. TQI's design frames and establishes through its context the effective communications of CLIENT'S content and Data.

i. Pursuant to the Master Agreement and Terms of Engagement **7.**4.5. CLIENT understands their responsibility of informing TQI of their desire and preference to own copyright. Unless agreed upon in a supplemental agreement signed by both parties, TQI will maintain ownership of all design copyright and shall be the sole source provider of support and derivative works associated with the design. This will include, but not be limited to:

> **7.**4.5.1 Website Design which includes Website wireframes, website concepts, website themes (including all code, media queries and device support), website code (HTML, CSS, JavaScript, SASS, PHP) and Aesthetic layout of page content including the use of whitespace, margins, padding and separation.
>
> **7.**4.5.2 Branded Materials which includes any and all print designs produced, business cards, trifolds, bi-folds, one-pagers, half-pagers, booklets, flyers, clothing, any and all marketing and promotional materials produced.
>
> **7.**4.5.3 Digital assets and designs produced including banners, images, tables, forms, email templates, user interfaces (UI), user experiences (UX), logo creations, promotional materials, digital signage, social media ads, eNewsletter designs; and
>
> **7.**4.5.4 Video and multimedia

j. Pursuant to the Master Agreement and Terms of Engagement **7**.5 Unless expressly stated in the SOW and/or PCR, copyright to the finished assembled work of web pages produced by TQI is owned by TQI. CLIENT is assigned rights to use as a TQI website the design, graphics, and text contained in the finished assembled website. Source code, work-up files,

7

software enhancements, design, customized or standard and computer programs created, compiled or integrated by TQI in conjunction with or without third-party TQI licensed software, source code and design (where applicable) shall remain the sole property of TQI. Except for the rights expressly granted under this Agreement, TQI and its licensors retain all right, title and interest in and to the Subscription Services and Documentation, including all related intellectual property rights therein. TQI reserves all rights in and to the Subscription Services and Documentation not expressly granted to CLIENT under this Agreement. CLIENT will not delete or in any manner alter the copyright, trademark, and other proprietary notices of TQI.

      k.      Pursuant to the Master Agreement and Terms of Engagement **7**.6 CONTENT ENTERED BY CLIENT IN THE FORM OF TEXT, IMAGES AND/OR DATA FROM THEIR SYSTEMS WHICH FEEDS INTO OR DISPLAYS WITHIN THE ASSEMBLED WORK IS SOLELY OWNED BY CLIENT. UNLESS OTHERWISE STATED IN A SOW(s) and/or PCR(s), TQI RETAINS OWNERSHIP AND COPYRIGHT FOR ALL ARTISTIC DESIGN, GRAPHICS, AND PHOTOS THEY PROVIDE IN ACCORDANCE WITH FEDERAL COPYRIGHT LAW. CLIENT UNDERSTANDS THAT APART FROM THE TQI SOURCE CODE, CLIENT CONTENT ASSOCIATED WITH TQI COPYRIGHTED SOURCE CODE MAY NOT FUNCTION IN THE SAME MANNER AS INTENDED EVEN WHEN ASSOCIATED WITH REPLACEMENT SOURCE CODE. ANY UNAUTHORIZED USE OF TQI SOFTWARE, SOURCE CODE AND ARTISTIC DESIGN IS STRICTLY FORBIDEN AND WILL BE CONSIDERED TO BE THEFT AND COPYRIGHT INFRINGEMENT.

      27.      CBC also violated TQI Acceptable Use Policy which further clarifies the prohibited uses of all services and products delivered by TQI and its affiliates:

  a. Pursuant to the TQI Acceptable Use Policy This Acceptable Use Policy (this "Policy") describes prohibited uses of all services offered by TQI and its affiliates (the "Services") and the website located at www.TQI.Solutions and all associated CLIENT sites (the "TQI Site"). The examples described in this Policy are not exhaustive. We may modify this Policy at any time by posting a revised version on the TQI Site. By using the Services or accessing the TQI Site, CLIENT agrees to the latest version of this Policy. If CLIENT violates the Policy or authorizes or helps others to do so, we may suspend or terminate your use of the Services.

  b. TQI may provide CLIENT with access to its computers, software, voicemail, e-mail, Internet access, cellular phones, fax and other telecommunications systems ("Technology Systems").  CLIENT understands and agrees that technology systems belong to TQI and that CLIENT is given access to these systems to help perform its job duties and to further TQI and CLIENT interests.

  c. TQI Net, Inc. warned Commercial Bank of California, and all clients by informing them of prohibited use of services, including respecting intellectual property rights of others:  "Business Integrity.  CLIENT must respect and avoid infringing upon the intellectual property rights of others, including but not limited to copyrights, trademark rights, patent rights, trade secret rights, publicity and privacy rights. Copying material from web sites without permission may be copyright infringement.  Use of the technology systems to violate third-party intellectual property rights is strictly prohibited."

  d. Pursuant to the TQI Acceptable Use Policy, Commercial Bank of California was placed on notice what actions constitute security violations and network abuse:

9

*B. No Security Violations or Network Abuse*

CLIENT may not use the Services to violate the security or integrity of any network, computer or communications system, software application, or network or computing device (each, a "System"). Prohibited activities include but are not limited to:

1. **Unauthorized Access.** Accessing or using any System without permission, including attempting to probe, scan, or test the vulnerability of a System or to breach any security or authentication measures used by a System. Providing your password to any other person, use any other person's username and password, or otherwise manage the Services through shared credentials is absolutely forbidden. The use of unauthorized credit cards, debit cards or other unauthorized payment devices on the Services is forbidden.
2. **Business Protection**. CLIENT may access the Internet only through an approved Internet firewall. All material downloaded from the Internet or from computers or networks that do not belong to TQI must be scanned for viruses before being exposed to the technology systems.
3. **Interception**. Monitoring of data or traffic on a System without permission.
4. **Falsification of Origin.** Forging TCPIP packet headers, email headers, or any part of a message describing its origin or route. This prohibition does not include the use of aliases or anonymous remailers.
5. **Unauthorized Reproduction and Use**. Take apart, decompile or reverse engineer any part of the Services to access things such as source code or algorithms, or access, search or create Accounts for the Services by any means other than our publicly supported interfaces (for example, scraping, spidering or crawling). Client shall not:
    a.
    
    a. Use or distribution of TQI's software in part or in whole as part of a commercially packaged software product deployed on CLIENT premises, framework, component, library or plug-in without a TQI partner Agreement;
    b. Disassemble, decompile, decoding or otherwise reverse translate or engineer, or attempt in any manner to reconstruct or discover any source code, underlying algorithms, JavaScript or design of TQI's software;
    c. Use, copy, modify, or merge copies of TQI's software and any accompanying documents, except as permitted in this Agreement;
    d. Sell, lease, assign, transfer, sublicense, disseminate, translate, duplicate, reproduce or copy TQI's software (or permit any of the foregoing) or any information pertaining thereto to any other party;
    e. Transfer, rent, lease, or sublicense this Agreement;
    f. Distribute, disclose, or otherwise make available to any third-party any portion of the source code, under no circumstances, without the express, prior written consent of TQI;
    g. Use any portion of the source code, in whole or in part, under any circumstances, as the basis for creating a product that provides the same, or substantially the same, functionality as any TQI software, nor assist or otherwise aid anyone else in taking any such actions that would limit TQI's independent development, sale, assignment, licensing, or use of its

10

       own software or any modification, enhancement, derivative work and/or extension thereto;

   h. Modify or delete, in whole or part, any copyright, trade secret, proprietary, confidential, or other notice thereon or therein without the express, prior written consent of TQI;

28. CBC completely ignored these known provisions by copying, stealing TQI's intellectual property, nearly all of which are specifically identified in the above provisions, and providing same to Digital Ocean, a third party competitor.

29. There may be other violations of the Master Agreement and Terms of Engagement, as we as additional violations of the TQI Acceptable Use Policy.

30. TQI Net, Inc. has been and continues to be harmed by CBC's actions.

31. Digital Ocean now is aware, or should be aware, that the website it currently hosts, includes material that is copyrighted and owned by TQI.

32. On January 9, 2023 TQI caused a Cease and Desist letter to be sent to CBC and Digital Ocean. Receipt of the letters to CBC were acknowledged by both bank employees as well and CBC's attorneys.

33. As of this date, the CBC mirror website hosted by Digital Ocean is still operational.

34. TQI has been and continues to be harmed by the continued use of the mirror website hosted by Digital Ocean.

35. If CBC and Digital Ocean are not ordered to immediately take down the website hosted by Digital Ocean, then TQI will continue to suffer irreparable harm.

36. TQI takes great lengths to protect its intellectual property rights.

37. CBC's actions have impaired TQI's ability to protect its intellectual property rights, and the continued use of the CBC website hosted by Digital Ocean will continue to frustrate TQI's ability to protect its intellectual property rights.

## COUNT ONE:  BREACH OF CONTRACT

38. Plaintiff incorporates paragraphs 1 through 37 of this Complaint as though fully redrafted herein.

39. CBC voluntarily entered into the contract (SOW) with TQI in October, 2013, and voluntarily renewed said contract.

40. The SOW executed in October, 2013 and renewed in 2017 and again in 2021 clearly states that the SOW is governed by the Master Agreement and Terms of Engagement.

41. The Master Agreement and Terms of Engagement further refer to the TQI Acceptable Use Policy.

42. CBC has breached the SOW, Master Agreement and Terms of Engagement, as well as the TQI Acceptable Use Policy by mining the website created by TQI, sharing that information with a third party competitor, Digital Ocean, and then colluding with Digital Ocean to host a mirror website, essentially the same design, code, processes as the website TQI created.

43. As a direct and proximate result of CBC's breach of contract, TQI has suffered, is suffering, and will continue to suffer irreparable damages so long as the mirror website is operational.

44. As a direct and proximate result of CBC's breach of contract, TQI has suffered, is suffering, and will continue to suffer additional damages in excess of $75,000.00.

## COUNT TWO:  THEFT OF PROPERTY

45. Plaintiff incorporates paragraphs 1 through 44 of this complaint as though fully redrafted herein.

46. CBC voluntarily entered into the contract (SOW) with TQI in October, 2013.

47. The contract and governing documents clearly indicate what material is proprietary processes and copyrighted material belonging to TQI, and the acceptable use of those proprietary processes and copyrighted material.

48. Even though the contract and governing documents clearly indicate the proprietary processes and copyrighted material belonging to TQI and CBC's acceptable use of those proprietary processes and copyrighted material, CBC intentionally ignored TQI's property rights and stole TQI's proprietary processes, source code and copyrighted material, including but not limited to TQI's software, design, source code, work-up files, software enhancements, customized or standard, computer programs created, compiled or integrated by TQI, and finished assembled work of website and web pages.

49. CBC further provided access to TQI's proprietary processes, source code, software and copyrighted material to Digital Ocean to create a mirror website, thereby providing TQI's copyrighted material to a third party competitor.

50. Digital Ocean knew or should have known the mirror website contained TQI's copyrighted material, thereby knowing it was using TQI's intellectual property.

51. TQI caused a Cease and Desist demand to be sent to CBC and to Digital Ocean on January 9, 2023.

52. To date, CBC and Digital Ocean have ignored TQI's demands, refusing to take down the mirror site containing TQI's copyrighted material.

53. TQI has suffered, is suffering, and will continue to suffer irreparable damages as a direct and proximate result of CBC and Digital Ocean's actions.

54. TQI has suffered, is suffering, and will continue to suffer other damages in excess of $75,000.00 as a direct and proximate result of CBC and Digital Ocean's actions.

55. Pursuant to Ohio Revised Code 2307.60 through 2307.61 TQI is entitled to triple damages as the result of the theft.

### COUNT THREE:  COPYRIGHT INFRINGEMENT

56. Plaintiff incorporates paragraphs 1 through 55 of this complaint as though fully redrafted herein.

57. CBC voluntarily entered into the contract (SOW) with TQI in October, 2013.

58. The contract and governing documents clearly indicate what material is copyrighted material belonging to TQI, and the acceptable use of that copyrighted material.

59. Even though the contract and governing documents clearly indicate the copyrighted material belonging to TQI and CBC's acceptable use of that copyrighted material, CBC intentionally ignored TQI's property rights and stole TQI's copyrighted material.

60. CBC further provided that copyrighted material to Digital Ocean to create a mirror website, thereby providing TQI's copyrighted material to a third party competitor.

61. Digital Ocean knew or should have known the mirror website contained TQI's copyrighted material, thereby knowing it was using TQI's intellectual property.

62. TQI caused a Cease and Desist demand to be sent to CBC and to Digital Ocean on January 9, 2023.

63. To date, CBC and Digital Ocean have ignored TQI's demands, refusing to take down the mirror site containing TQI's copyrighted material.

64. TQI has suffered, is suffering, and will continue to suffer irreparable damages as a direct and proximate result of CBC and Digital Ocean's actions.

65. TQI has suffered, is suffering, and will continue to suffer other damages in excess of $75,000.00 as a direct and proximate result of CBC and Digital Ocean's actions.

PRAYER FOR RELIEF

WHEREFORE, TQI Net, Inc. prays for this Court to find Defendant Commercial Bank of California liable for breach of contract, both Defendants Commercial Bank of California, and further prays for the following relief:

A. A Temporary and Permanent Injunction against both Commercial Bank of California and Digital Ocean, requiring both to take down the mirror website, and to restrain both from using TQI Net, Inc's copyrighted materials; and

B. For Breach of Contract, damages from Commercial Bank of California to TQI Net, Inc. in the amount of $1,000,000.00; and

C. For theft of property, damages from Commercial Bank of California and Digital Ocean in the amount of $3,000,000.00; and

D. For Copyright Infringement, damages from Commercial Bank of California and Digital Ocean in the amount of $1,000,000.00; and

E. Attorney's fees and all costs of this action, including expert fees if any; and

F. Any and all other damages this Court finds just and reasonable.

        Respectfully Submitted,


        *Robert S. Fischer*
        Robert S. Fischer (0071640)
        Sams Fischer, LLC
        Counsel for TQI Net, Inc.
        5155 Financial Way, Suite 11
        Mason, Ohio 45040
        (513) 398-4646
        (513) 398-8717 (fax)
        rfischer@samsfischer.com